JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.  8:26-cv-01189-DOC-DMK                                    Date:  June 16, 2026

Title: Yesenia Morales Hernandez De Diaz v. Amazon.com Services LLC et al

PRESENT:              THE HONORABLE DAVID O. CARTER, JUDGE

              Karlen Dubon                                    Not Present
             Courtroom Clerk                                  Court Reporter

       ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
              PLAINTIFF:                           DEFENDANT:
             None Present                          None Present

**PROCEEDINGS (IN CHAMBERS):   ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

       On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

**I.     Background**

       This is an employment action brought under California state law. On June 20, 2024, Plaintiff Yesenia Morales Hernandez De Diaz ("Plaintiff") was hired as a Warehouse Associate for Defendants Amazon.com Services LLC ("Defendants"). Complaint ("Compl.") (Dkt. 1-2) ¶ 17. Plaintiff's duties included placing packets in bags, filling carts with bags and packages, and placing packages in order. *Id.* ¶ 18. In January 2025 Plaintiff notified her manager, Defendant Josh DOE, that she was pregnant and requested lighter work duties due to her pregnancy. *Id.* ¶ 21-22. Plaintiff alleges that Defendant Josh DOE declined Plaintiff's request and employers continued to assign Plaintiff physically demanding tasks despite Plaintiff's pregnancy. *Id.* ¶ 23.

       On January 24, 2025, Plaintiff alleges that she sustained a workplace injury when she was required to pull a box. *Id.* ¶ 25. Plaintiff alleges that, during the incident, she hit her stomach and suffered a lower back injury. *Id.* ¶ 25. As a result of Plaintiff's workplace injury and medical restrictions from her treating physician, Plaintiff was out of work for the entire month of February 2025 and most of March 2025. *Id.* ¶ 28. In April

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01189-DOC-DMK                           Date: June 16, 2026
                                                                                  Page 2

2025 Plaintiff was able to return to work with medical restrictions provided by her treating physician. *Id.* ¶ 30. On April 7, 2025, Plaintiff alleges that Employers were aware of Plaintiff's medical restrictions and rarely respected the restrictions ordered by Plaintiff's physician. *Id.* ¶ 33. In April 2025 Plaintiff sustained an additional injury to her arm as a direct result of allegedly being required to lift heavy objects which was in violation of her documented medical restriction. *Id.* ¶ 35.

From January 24, 2025, through July 1, 2025, Plaintiff alleges that she was subjected to harassment by Defendants HR DOE, Josh DOE, and John DOE related to her pregnancy, her medical restrictions, and her requests for accommodation. *Id.* ¶ 39. On June 23, 2025, Plaintiff alleges that she met with Defendant HR DOE and complained about her employers not respecting her medical accommodations. *Id.* ¶ 40. Plaintiff further alleges that she experienced issues with co-workers regarding her work while pregnant and injured. *Id.* Paintiff alleges in response to her complaints, employers failed to take corrective action to accommodate her medical restrictions and address the harassment she was experiencing from co-workers. *Id.* ¶ 42.

Plaintiff returned to work in April 2025. *Id.* ¶ 51. Plaintiff alleges that she missed six days of work, during the three months before her termination, due to pregnancy-related medical issues. *Id.* ¶ 51. Plaintiff also missed three days of work for illness related to her pregnancy and her work-related injuries. *Id.* ¶ 53. All of Plaintiff's absences were properly documented with medical documentation. *Id.* ¶ 54.

On July 1, 2025, Employers terminated Plaintiff's employment and stated that the reason for termination was "for missing work." *Id.* ¶ 56. Plaintiff alleges that her termination was unlawful discrimination based on her pregnancy and disability, as well as unlawful retaliation against Plaintiff for requesting medical accommodations and for complaining to human resources about Employers' violations of her rights. *Id.* ¶ 57.

Plaintiff further alleges employers failed to authorize and permit Plaintiff to take all required meal and rest breaks and failed to pay Plaintiff premium wages for meal and rest breaks that were missed, interrupted, or not provided. *Id.* ¶ 47.

Plaintiff now brings the following claims against Defendants: 1) Failure to Pay for Meal Periods Not Provided; 2) Failure to Pay for Rest Periods Not Provided; 3) Failure to Pay Minimum Wages; 4) Failure to Reimburse Business Expenses; 5) Failure to Allow Inspection of Employment Records; 6) Pregnancy Discrimination (Government Code §12945, *et seq.*); 7) Disability Discrimination (Gov. Code §12940, *et seq.*); 8) Failure to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01189-DOC-DMK                                   Date: June 16, 2026
                                                                                          Page 3

Prevent Discrimination and Harassment (Gov. Code §12940(k)); 9) Failure to Accommodate Physical Disability in Violation of Government Code Section 12940(m); 10) Failure to Accommodate Pregnancy-Related Work Restrictions in Violation of Government Code Section 12945(3); 11) Failure to Engage in Good Faith Interactive Process in violation of Government Code Section 12940(n); 12) Failure to Engage in Good Faith Interactive Process in violation of Government Code Section 12945(3); 13) Retaliation in Violation of Government Code Sections 12940, 12945.2; 14) Harassment Due to Pregnancy; 15) Harassment Due to Disability; 16) Wrongful Termination in Violation of Public Policy; 17) Intentional Infliction of Emotional Distress; 18) Unfair Competition in Violation of Business and Professions Code Section 17200 *et seq. See generally* Compl.

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on January 14, 2026. Notice of Removal ("Not.") (Dkt. 1) at 2. On May 13, 2026, Defendants Amazon.com Services LLC ("Defendants") removed the action to this Court, asserting diversity jurisdiction. *Id*.

## II.      Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01189-DOC-DMK                              Date: June 16, 2026
                                                                                          Page 4

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01189-DOC-DMK                      Date: June 16, 2026
                                                    Page 5

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

### III.    Discussion

Defendant argues that this Court has diversity jurisdiction in this action. Not. at 1. The Court disagrees.

Defendants claim that Plaintiff "demands no less than $1,000,000 in general damages on multiple causes of action" Not. at 6. However, nowhere in the Complaint does it demand a specific amount, nor does Defendant provide any concrete facts showing that Plaintiff's alleged injuries might result in damages over $75,000.

The Court only considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious") (emphasis added). Here, Plaintiff was terminated on July 1, 2025, Compl. ¶ 56, and the case was removed on May 13, 2026, *see generally* Not. At the time of Plaintiff's termination, she was paid $20.25 per hour, or $648.00 per week working a 32 hour work week. Compl. ¶ 18. Accordingly, Plaintiff's past economic damages at the time of removal are $29,160.00. [1] This Amount in Controversy is below the $75,000 threshold. Even when the $750 penalty under Labor Code Section 1198.5(k) is added to the calculation, the total Amount in Controversy is $29,910, which does not exceed the $75,000 threshold.

While Plaintiff *might* have suffered injuries warranting an amount over $75,000, the record before the Court today does not support that. Furthermore, this Court does not include speculative damages, such as attorneys' fees or emotional distress damages, when calculating the amount in controversy. *See Traxler*, 596 F.3d at 1011; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary

---

[1] $20.25/hour x 32 hours/week x 45 weeks = $29,160

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01189-DOC-DMK                                   Date: June 16, 2026
                                                                                              Page 6

language, such fees may be included in the amount in controversy."). Because Defendant has not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision here is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[2] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

## IV.    Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                              Initials of Deputy Clerk: kdu
CIVIL-GEN

---

[2] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.